IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANA MILLER,                              )
                                          )
          Plaintiff,                      )   Case No. CV04-1421-HU
                                          )
     vs.                                  )   OPINION AND ORDER
                                          )
PORTLAND PUBLIC SCHOOL DISTRICT           )
No. 1 and DOES 1-10, Inclusive,           )
                                          )
          Defendants.                     )
                                          )

Mary Betker
The Betker Law Firm
3401 Evergreen Way # 3A
Washougal, WA 98671
      Attorney for plaintiff

Jeffrey D. Austin
Erin Truax
Miller Nash
111 S.W. Fifth Avenue Suite 3400
Portland, Oregon 97204
      Attorneys for defendants

HUBEL, Magistrate Judge:

Plaintiff Dana Miller brought this action against her employer, Portland Public School District No. 1 (the District), asserting claims for violation of state and federal anti-discrimination laws and of her constitutional rights to due process and equal protection. Defendants move for summary judgment on all claims.

## Factual Background

*1. Diagnosis and medical leave of absence*

Plaintiff began her employment with the District in 1981 and worked most recently as a principal's secretary. Deposition of Dana Miller 14:7-9. In August 2003, plaintiff was diagnosed with alcoholism. Id. at 19:2-5, 32:25-33:11. She requested a medical leave of absence through October 5, 2003. Id. at 18:6-10, 60:13-61:18. Plaintiff's primary care physician, Marjorie Hrbek, M.D., certified that plaintiff had received inpatient treatment for alcoholism and was currently in outpatient therapy that was expected to last four to eight weeks. Declaration of Ruth Hipes, Exhibit 3. The District granted plaintiff's request for leave. Miller deposition at 65:1-67:12.

*2. The Last Chance Agreement*

During the time she was on leave, plaintiff informed the District that she was still drinking, despite the inpatient treatment. Declaration of Maureen Sloane ¶ 8. Because of this

revelation, the District asked plaintiff to sign a "Last Chance Agreement," consistent with the District's alcohol and drug policies. Id.

According to the declaration of Maureen Sloane, Human Resources Counsel for the District, the District has a "no tolerance" alcohol policy. Sloane Declaration ¶ 5. Employees of the District are prohibited from using alcoholic beverages at work, coming to work under the influence of, or staying away from work because of the use of, alcoholic beverages. Id. Violation of the policy may result in disciplinary action or discharge. Id.

The District implements its alcohol policy by using Last Chance Agreements. Id. at ¶ 6. Whenever the District has a reasonable belief that a District employee has drug or alcohol dependency, that employee is asked to sign a Last Chance Agreement. Id. Last Chance Agreements are not disciplinary. Id. at ¶ 7. They are used to "remind District employees of the no tolerance policy and to assist employees in receiving treatment." Id. The Last Chance Agreement states that the employee will successfully complete treatment and will provide documentation to the district that he or she has done so. Id. Last Chance Agreements are not placed in the employee's personnel file. Id.

Plaintiff never signed a Last Chance Agreement, and never provided the District with any specific information indicating that she had received treatment for alcoholism after August 2003.

3 - OPINION AND ORDER

Id. at ¶¶ 8, 10.

The District periodically extended the length of plaintiff's leave, at her request. Miller deposition 65:1-67:12. Plaintiff's 484 hours of accrued sick leave were exhausted in December 2003. Miller deposition 91:2-6.

Plaintiff applied for, and obtained, long term disability (LTD), which became effective December 2003, and she continues to receive LTD benefits. Miller deposition 91:2-10; 18:11-15. Although plaintiff is still employed by the District, she has not worked since August 2003. Id. 18:11-20. In March 2004, the District filled her position with a permanent replacement, pursuant to its agreement with plaintiff's union, the Portland Federation of Teachers and Classified Employees, Local 111 (PFTCE). Id. at 127:21-128-7; Declaration of Michelle Riddell ¶¶ 3, 4, 7.

   3.   *The "sick leave bank"*

The District and PFTCE jointly administer a "sick leave bank" (the Bank) for PFTCE members who have exhausted their sick leave and who meet other requirements. Hipes Declaration ¶ 1, 4 and Exhibit 1. The District and the PFTCE have established guidelines for the use of Bank hours. Hipes Declaration ¶ 4. The guidelines provide that PFTCE members may contribute up to 350 hours of sick leave to the Bank per year. Miller deposition 71:17-23; Hipes Declaration, Exhibit 1 ¶ 4. The District also

matches the PFTCE member contribution with 350 hours of sick leave to the Bank per year, making a maximum of 700 hours of leave in the Bank, all of which are available to PFTCE members. Id.; Miller deposition 124:22-125:7. Typically, the hours in the Bank are used up before the end of the school year. Hipes Declaration ¶ 3.

Under the Bank's guidelines, employees are entitled to use Bank hours only in case of illness or injury "that is of a critical or life threatening nature." Hipes Declaration, Exhibit 1, ¶ 5; Miller deposition 72:2-7. An employee wishing to obtain Bank hours must complete an application process, which includes providing documentation from a medical provider about the "nature of the illness or injury, treatment plan, and prognosis." Miller deposition at 72:8-13; Hipes Declaration ¶¶ 5-6; Hipes Declaration, Exhibit 1, ¶ 5.

Applications for Bank hours are jointly reviewed by the District and PFTCE. Miller deposition 71:5-23; Hipes Declaration ¶ 8; Hipes Declaration Exhibit 1, ¶ 2. The District and the PFTCE must agree on the applicants to be given hours from the Bank; neither may make the determination unilaterally. Hipes Declaration ¶ 8. Employees on paid disability leave are not eligible for hours from the Bank. Hipes Declaration, Exhibit 1, ¶ 1.

///

In November 2003, plaintiff submitted an application for hours from the Bank. Miller deposition 72:19-73:3. Defendants have proffered evidence that plaintiff's request for Bank hours was denied because the August 2003 medical certification received by the District was insufficient to establish that she was currently eligible for Bank hours. Hipes Declaration ¶ 11. The August 2003 certification did not provide information about plaintiff's current treatment plan or prognosis or explain why she could not work while continuing to receive outpatient treatment for alcoholism. Id. The medical certification of August 2003 stated only that she had received in-patient treatment in August 2003 and that she would be in outpatient therapy for four to eight weeks. Id. The August medical certification did not indicate that plaintiff would be unable to work in November 2003. Id. According to the defendants, an employee with alcoholism would be eligible for Bank hours so long as the employee provided sufficient documentation of a treatment plan and prognosis, to enable the District and PFTCE to determine that the nature of the employee's illness was currently critical or life-threatening. Id.

Ruth Hipes, who was then the Staffing Secretary/HR Representative for Leaves for the District, has stated in her declaration that she had conversations with plaintiff in which Ms. Hipes told plaintiff the District and the PFTCE would

consider her request for Bank hours if plaintiff submitted additional information from her health care providers about her current treatment plan and prognosis. Id. at ¶ 13. Ms. Hipes states further that plaintiff was also told in correspondence from the District that the District and PFTCE would consider her request for Bank hours if she provided updated medical documentation about her treatment plan and prognosis. Id. at ¶ 14.

According to Ms. Hipes' declaration, plaintiff responded with notes from her primary care physician, Dr. Hrbek, which stated that since August 2003, "we have been working to get [plaintiff] treatment for alcoholism," and that treatment had included "detoxification, outpatient residential treatment, prescription drugs, and multiple doctors' visits." However, Dr. Hrbek's notes contained no information about plaintiff's current treatment, why she was unable to work, her prognosis, or the current effects of alcoholism on her health--i.e., whether her alcoholism constituted a critical or life-threatening illness. Plaintiff testified at her deposition that she received inpatient treatment for her alcoholism only once, in August 2003, and that she did not receive any outpatient therapy. Miller deposition 48:15-22. Miller visited her primary care physician every two weeks, who "listened" and "encouraged" her. Id. 43:3-4, 44:1-3.

Ms. Hipes states that the Bank's hours were ultimately

7   - OPINION AND ORDER

depleted without plaintiff's ever producing the documentation the District and the PFTCE had requested to determine whether she qualified. Hipes Declaration ¶ 15.

Plaintiff filed this action on October 1, 2004, contending that the denial to her of Bank hours, the request that she sign a Last Chance Agreement, and the District's hiring of a replacement for her after she had been on leave for over six months were discriminatory and retaliatory under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12210, and corresponding state law, and deprived her of her constitutional rights to due process and equal protection, in violation of 42 U.S.C. § 1983.

## Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence

8   - OPINION AND ORDER

of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324. Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

On a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. Clicks Billiards Inc. v. Sixshooters Inc., 251 F.3d 1252, 1257 (9th Cir. 2001).

**Discussion**

**1. Should the disability discrimination claims be dismissed for failure to exhaust administrative remedies?**

Defendants assert that plaintiff's ADA and Oregon anti-discrimination claims must be dismissed because, although she filed a charge against the PFTCE with the Equal Employment Opportunity Commission (EEOC) and received a right to sue letter following dismissal of that charge, she never filed an EEOC charge against the District. Sloane Declaration ¶ 13.

Before bringing a civil action for employment discrimination under Title I of the ADA, plaintiff must file a

9  - OPINION AND ORDER

timely charge of discrimination with the EEOC, or with a state or local agency able to grant relief from the unlawful employment practice. 42 U.S.C. § 12117(a)[adopting Title VII's administrative filing requirements, set out at 42 U.S.C. § 2000e-5(e)(1)]; Zimmerman v. State Dept. of Justice, 170 F.3d 1169, 1172 (9th Cir. 1999). Although failure to file an EEOC complaint is not a complete bar to district court jurisdiction, substantial compliance with the exhaustion requirement is a jurisdictional prerequisite; the plaintiff's charge, and the investigation of that charge, determines "[t]he jurisdictional scope" of a later federal court action. Leong v. Potter, 347 F.3d 1117, 1122 (9th Cir. 2003). The exhaustion requirement is akin to a statute of limitations and is subject to waiver, equitable estoppel, and equitable tolling. Id.

There is a 180-day deadline for filing charges with the EEOC and a 300-day deadline for filing charges with the state or local agency. 42 U.S.C. § 200e-5(e)(1). The filing deadline acts as a statute of limitations. Zimmerman, 983 F. Supp. 1327, 1329 (D. Or. 1997), *aff'd,* 170 F.3d 1169 (9th Cir. 1999).

Plaintiff asserts that she "had the choice of choosing between the grievance procedure through the collective bargaining agreement and her civil remedy," and that she chose the civil remedy by taking "her case to the EEOC." Plaintiff's Opposition p. 4. However, plaintiff has proffered no evidence that she ever

filed an EEOC charge against the District; the defendants' evidence that the District never received notice of an EEOC charge filed against it by plaintiff is unrebutted. See Sloane Declaration ¶ 13. The only EEOC charge in the record before the court was filed on May 7, 2004, against PFTCE, not the District. Declaration of Mary Betker, Exhibit 5. The charge against the PFTCE does not satisfy the administrative exhaustion requirement with respect to the District. See Leong, 347 F.3d at 1122 (the jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation, and the specific claims made in district court ordinarily must be first presented to the EEOC).

Plaintiff contends that an offer of mediation was made through the EEOC, but the District turned down the offer and a "right to sue" notice was sent out to the parties. However, plaintiff has produced no evidence to support this assertion except the following statement by Mary Betker, plaintiff's counsel: "When a charge is filed with the EEOC, a mediation opportunity is presented to both sides. From our side we always agree to mediate as it is a forum where many cases can resolve." Betker Declaration ¶ 5. As defendants point out, nowhere in her declaration does Ms. Betker state that mediation was offered to the District, or for that matter, to anyone in this case. The only "right to sue" letter in the record corresponds to

plaintiff's charge against PFTCE. Betker Declaration, Exhibit 6.

Plaintiff contends that Exhibit 4 to the Betker declaration is an EEOC charge. However, Exhibit 4 is an EEOC Intake Questionnaire dated March 18, 2003. There is no evidence in the record that the District ever received a copy of the Intake Questionnaire or that it was filed with the EEOC. Further, as defendants point out, the Intake Questionnaire is dated March 2003, and therefore predates plaintiff's diagnosis of alcoholism in August 2003, and plaintiff's request for Bank hours in November 2003.

Plaintiff has not shown grounds for equitable relief from the administrative exhaustion requirement, such as waiver, equitable estoppel, or equitable tolling. I conclude, therefore, that plaintiff's claims under the ADA and corresponding state statutes, against PPS and Does 1-10, should be dismissed for failure to satisfy the prerequisite of a charge with the EEOC.

> **2. Should plaintiff's state law claims for discrimination and retaliation be dismissed for failure to provide the notice required by the Oregon Tort Claims Act?**

Defendant asserts that plaintiff never provided it the notice required by the Oregon Tort Claims Act, Or. Rev. Stat. § 30.260-30.300, Sloane Declaration ¶ 14, and that this failure bars her claims for discrimination and retaliation under Oregon law.

///

> Section 30.275(1) provides,
>
> > No action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be maintained unless notice of claim is given as required by this section.

The statutory notice requirement applies to claims for employment discrimination in violation of Oregon law. Brinkley v. Oregon Health Sciences University, 94 Or. App. 531 (1988).

The District has proffered evidence that it did not receive notice of plaintiff's claim until it was served with her complaint on January 6, 2005, Sloane Declaration ¶ 14, well over 180 days from the last possible date of alleged discrimination or retaliation.

Plaintiff asserts that the EEOC charge and the right to sue letter, Exhibits 5 and 6 of the Betker Declaration, gave adequate notice to the District, thereby placing plaintiff in substantial compliance with the requirements of timely notice before filing her action. I disagree. The EEOC charge and the right to sue letter show on their face that the charge was brought against PFTCE, and that the right to sue letter corresponded to the charge against that entity. As discussed, there is no evidence that the District ever received the Intake Questionnaire upon which plaintiff also relies as proof of notice. Because plaintiff has not complied with the requirements of the Oregon Tort Claims

///

Act, her state law claims for discrimination and retaliation must be dismissed.

### 3. Can plaintiff maintain her due process and equal protection claims?

A procedural due process claim has two elements: 1) a deprivation of a protectible interest, and 2) denial of adequate procedural protections. See Goldberg v. Kelly, 397 U.S. 254 (1970); see also DeBoer v. Pennington, 206 F.3d 857, 868 (9th Cir. 2000).

Defendants argue that there are no procedural guidelines that provide "significant substantive restrictions" on the decision by the PFTCE and the District with respect to Bank hours, citing Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir. 1984)(constitutionally protected property interest is created if the independent source provides "procedural requirements ... intended to be a 'significant substantive restriction on' ... decision making.") Defendants argue that PFTCE members are not guaranteed Bank hours under the agreement between the PFTCE and the District, or under the guidelines for Bank hours; rather, the Bank hours are awarded at the discretion of the District and the PFTCE to applicants who are found to meet the criteria for Bank hours. Moreover, the number of Bank hours available to PFTCE employees is limited, so that it is always possible that the hours will be used up by the time an applicant requests them.

Plaintiff has not responded to defendants' argument that she had no protectible interest in the Bank hours.

Plaintiff has alleged that "[o]nce the property right of her employment was conferred... the school district had an obligation to afford plaintiff due process," and that she was deprived of due process because she was not given a "full post-deprivation hearing." Complaint ¶ 29. But there is no evidence in the record that plaintiff has lost her job. Plaintiff testified that she was still employed by the District, Miller deposition 18:11-20, although she has not worked since August 2003. Nor is there any evidence in the record that plaintiff has made an attempt to return to work. As defendants point out, the collective bargaining agreement permits the District to hire a permanent replacement for plaintiff's position after being on leave for six months. Riddell Declaration ¶¶ 3-4; Exhibit 1 to Riddell Declaration p. 24. Because plaintiff remains a District employee but has made no attempt to return to her duties, and because the collective bargaining agreement permits the District to replace her after six months of leave, she cannot show that she was deprived of a protectible property interest, and therefore cannot make out a claim for violation of her right to due process.

///

///

*b. Equal protection*

Defendants move against this claim on the ground that plaintiff has not shown that she belongs to a suspect or quasi-suspect class.

For equal protection purposes, heightened scrutiny is applied only when a restriction burdens a suspect class or penalizes the exercise of a fundamental right. Nordlinger v. Hahn, 505 U.S. 1, 10 (1992); NAACP, Los Angeles Branch v. Jones, 131 F.3d 1317, 1321 (9th Cir. 1997). In the absence of a suspect classification or a fundamental right, the court presumes the classification is constitutional. Harris v. McRae, 448 U.S. at 322; Rodriguez v. Cook, 163 F.3d 584, 588 (9th Cir. 1999).

Plaintiff asserts that she was treated differently from other employees who were given Bank hours because she is an alcoholic. But, as defendants point out, alcoholics are not a suspect or a quasi-suspect class. Ball v. Massanari, 254 F.3d 817, 824 (9th Cir. 2001)("Alcoholics have not yet achieved either a suspect or a quasi-suspect class for purposes of equal protection analysis.") Plaintiff has not responded to this argument. I conclude that the equal protection claim should be dismissed.

///

///

## Conclusion

Defendants' motion for summary judgment (doc. # 17) is GRANTED.

IT IS SO ORDERED.

Dated this 22nd day of December, 2005.

<u>/s/ Dennis James Hubel</u>
　　Dennis James Hubel
United States Magistrate Judge